UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RANDALL B.,

               Plaintiff,               **DECISION AND ORDER**

    v.

                                                       1:22-CV-00985 CDH

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.
_____

## INTRODUCTION

Plaintiff Randall B. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 4; Dkt. 5; Dkt. 6). For the reasons that follow, the Court denies Plaintiff's motion (Dkt. 4) and grants the Commissioner's motion (Dkt. 5).

## BACKGROUND

On July 22, 2019, Plaintiff protectively filed applications for DIB and SSI. (Dkt. 3 at 116-18).[1] His applications were initially denied on November 22, 2019, and upon

---

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

reconsideration on March 10, 2020. (*Id*. at 132-44). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id*. at 146), which was held on August 6, 2020, November 11, 2020, and May 6, 2021 (*id*. at 40-91). On May 28, 2021, the ALJ issued an unfavorable decision. (*Id*. at 18-39). Plaintiff sought review from the Appeals Council, which denied his request on October 20, 2022. (*Id*. at 7-13). Plaintiff thereafter commenced this action. (Dkt. 1).

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II.  Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for DIB or SSI. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the

Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ found that claimant met the insured status requirements of the Act through June 30, 2023. (Dkt. 3 at 23).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since December 31, 2017, the alleged onset date. (*Id.*). The ALJ found at step two that Plaintiff had the following severe impairments: "left lower extremity venous insufficiency with edema and recurrent ulceration; low back disorder; right knee disorder; and obesity[.]" (*Id.* at 24). The ALJ also concluded that Plaintiff had the following non-severe impairments: "history of pulmonary embolism, small left renal mass, gastroesophageal reflux disease (GERD), and hypertension." (*Id.*).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id*. at 25). At step three, the ALJ specifically discussed the criteria of Listings 1.15, 1.16, 1.17, 1.18, and 4.11. (*Id*. at 25-26). The ALJ also considered the impact of Plaintiff's obesity, in accordance with Social Security Ruling ("SSR") 19-2p. (*Id*. at 26-27).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> can frequently climb ramps or stairs. He can frequently climb ladders, ropes, or scaffolds. He can frequently balance, as defined in the Dictionary of Occupational Titles (DOT). He can occasionally stoop, kneel, crouch, and crawl.

(*Id*. at 27-30). The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work. (*Id*. at 30).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id*. at 30-31). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from December 21, 2017, through the date of the ALJ's decision. (*Id*. at 31-32).

## II. The Commissioner's Final Determination is Supported by Substantial Evidence and does not Contain a Reversible Legal Error

Plaintiff argues that the ALJ erred in evaluating the medical opinion of consultative examiner Dr. Russell Lee, and that this error warrants vacatur and

remand. (*See* Dkt. 4-1). The Court is unpersuaded by this argument, for the reasons set forth below.

### A. **<u>Standard for Assessment of Medical Opinions</u>**

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . .will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors, and must be discussed in the ALJ's decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

### B. Dr. Lee's Examination and Opinion

Dr. Lee performed a consulting internal medicine examination on Plaintiff on October 29, 2019. (Dkt. 3 at 647-51). Dr. Lee observed that Plaintiff appeared to be in no acute distress, had a normal gait, and could walk on his heels and toes without difficulty. (*Id.* at 649). Plaintiff had a normal stance, was able to perform a full squat, and used no assistive devices. (*Id.*). He had an impaired range of motion in his cervical and lumbar spine, but no scoliosis, kyphosis, or abnormality in his thoracic spine. (*Id.*). Straight leg raising tests were negative bilaterally. (*Id.* at 649-50).

Plaintiff had an impaired range of forward elevation and abduction in his shoulders, but a full range of motion with respect to adduction, internal rotation, and external rotation. (*Id.* at 650). He had a full range of motion bilaterally in his elbows, forearms, wrists, hips, knees, and ankles. (*Id.*). His joints were stable and nontender, his hand and finger dexterity were intact, and he had 5/5 grip strength bilaterally. (*Id.*). Dr. Lee observed that an x-ray of the knee was negative and an x-ray of the lumbosacral spine showed lumbarization of the S1 vertebral body, mild levoscoliosis,

moderate degenerative change at T12-L4, and mild degenerative changes at L4-S1. (*Id.*).

Dr. Lee diagnosed Plaintiff with lower back pain, left knee pain, right wrist pain, right ankle pain, and right should pain. (*Id.*). He concluded that Plaintiff had a fair prognosis. (*Id.*). Dr. Lee opined that Plaintiff had "moderate limitations for activities involving prolonged sitting, prolonged standing, bending, lifting, and walking great distances." (*Id.* at 651).

### C.  The ALJ's Assessment of Dr. Lee's Opinion

The ALJ found Dr. Lee's assessment unpersuasive. (Dkt. 3 at 30). The ALJ first noted that Dr. Lee's opinion was vague, "without reference to specific functional limitations in vocationally-relevant terms." (*Id.*). The ALJ then considered the supportability of the opinion, explaining that it was "not fully supported by [Dr. Lee's] own objective findings, as Dr. Lee noted that the claimant had a normal gait, full grip strength, negative straight leg raise testing, intact sensation, and full strength in all extremities." (*Id.*). The ALJ then considered the consistency of the opinion, and concluded that "a finding of 'moderate' limitations is not generally consistent with the other evidence of record because [Plaintiff] himself reported doing building-type projects, said that he lead[s] an active lifestyle, and noted that he often lifted weights for exercise[.]" (*Id.*).

Plaintiff argues that it was error for the ALJ to reject the opinion as vague "without first reaching out to Dr. Lee to clarify the opinion." (Dkt. 4-1 at 7). The Court is unpersuaded by this argument. The Second Circuit has expressly rejected the contention that an ALJ is "duty bound to obtain a more detailed and clarified

statement from [a medical source] before rejecting statements due to vague, undefined terms." *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022); *see also Darci H. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00877 (JGW), 2024 WL 1721333, at *5 (W.D.N.Y. Apr. 22, 2024) ("[A]n ALJ is free to reject a vague medical source opinion without needing to recontact the source for clarification."). The ALJ is required to recontact a medical source only if he or she "lacks sufficient evidence in the record to evaluate the doctor's findings[.]" *Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018). This was not such a case, and the Court finds no error in the ALJ having not recontacted Dr. Lee.

Plaintiff next argues that the ALJ erroneously "substituted his own lay judgment for Dr. Lee's medical expertise when he rejected the opinion, finding that it was inconsistent with Dr. Lee's own exam." (Dkt. 4-1 at 8). "To be sure, generally, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). However, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination").

Here, Plaintiff faults the ALJ for having concluded that Dr. Lee's opinion was unsupported by his physical exam findings. (Dkt. 4-1 at 8). But the Commissioner's regulations expressly require the ALJ to consider whether the objective medical

- 9 -

evidence presented by a physician supports his or her opinions. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ did not impermissibly "play doctor" by concluding that the physical examination findings were inconsistent with the limitations identified by Dr. Lee. To the contrary, the ALJ's conclusions are consistent with the opinions of state agency reviewing physicians Drs. A. Pariakaruppan and M. Kirsch, both of whom reviewed Dr. Lee's findings and concluded that Plaintiff was capable of light work with postural limitations to occasional stooping, kneeling, crouching, and crawling. (Dkt. 3 at 96-97, 112-13). The Court finds no error in the ALJ's supportability analysis.

Plaintiff next argues that "the ALJ erred in mischaracterizing Plaintiff's daily activities and holding this mischaracterization against Plaintiff in deciding to reject Dr. Lee's opinion." (Dkt. 4-1 at 9). Specifically, Plaintiff contends that the ALJ exaggerated the record in concluding that Plaintiff's activities included doing building-type projects, leading an active lifestyle, and often lifting weights for exercise. (*Id.*). The Court disagrees. Plaintiff testified at the hearing that he lifted weights in an attempt to improve his back, including curls and squats, and that he had worked up to squatting 200 pounds and curling 50 to 100 pounds. (Dkt. 3 at 66-67). Plaintiff also testified about building an outside porch and rail at his house in 2020, and reported on a written function-report that he did "weed-wacking." (*Id.* at 63-65, 417). Plaintiff reported that he shopped in stores for groceries, food, and school supplies for an hour to an hour and a half, and that he did not require help with house and yard work. (*Id.* at 416-417). Plaintiff testified that he attended GED class every Wednesday for an hour and a half, and that he attended church every Sunday for an

hour and a half. (Dkt. 3 at 51, 65-66). A treatment record from Olean General Hospital dated November 4, 2020, states that Plaintiff "leads an active lifestyle." (*Id.* at 793). This evidence is sufficient to support the ALJ's conclusions regarding Plaintiff's activities of daily living.

Certainly, there is some evidence in the record suggesting that Plaintiff's activities were more limited, some of which Plaintiff has cited. But it is the ALJ's function to resolve disputed factual matters, and "[t]he issue is whether substantial evidence supports the ALJ's determination–not plaintiff's." *Skylar W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-168-RAR, 2023 WL 2753856, at *5 (D. Conn. Mar. 31, 2023). If the ALJ's conclusions are supported by "such relevant evidence as a reasonable mind might accept as adequate to support [that] conclusion," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted), no more is required. That standard is satisfied here.

Plaintiff further contends that the ALJ committed an "overarching" error in "elevating the state agency reviewing opinions over Dr. Lee's consulting, examining opinion." (Dkt. 4-1 at 10-11). But the ALJ has the discretion to weigh the medical sources of record and assess the persuasiveness of each. Frequency of examination is just one of many factors to be considered in making this assessment. Moreover, and as Defendant correctly points out (*see* Dkt. 5-1 at 13-14), Drs. Kirsch and Periakaruppan had the benefit of the complete medical record in making their assessments. The Court finds no error in the ALJ's determination that these physicians' opinions were more persuasive than Dr. Lee's.

In sum, the Court finds no error in the ALJ's assessment of Dr. Lee's opinion, and accordingly finds no basis to vacate or remand the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 5) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 4) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:     July 29, 2025
           Rochester, New York